UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-14347-CIV-MAYNARD

JOSEPH ROBERT MCINTYRE,

     Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner,
Social Security Administration,

     Defendant.

_____/

FILED by _____ D.C.

OCT 3 0 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 18)

**THIS CAUSE** comes before this Court upon the above Motion.
Having reviewed the Motion, Response, Reply, and Administrative
Record (DE 13)[1], and having held a hearing thereon on June 26,
2018, this Court finds as follows:

### BACKGROUND

1.    The Plaintiff applied for Title II disability
insurance benefits under the Social Security Act on June 11,
2013 (with a protective filing date of May 27, 2013). The
application was denied initially and after reconsideration. On
April 5, 2016 an Administrative Law Judge ("ALJ") rendered a
decision finding the Plaintiff not disabled under the terms of
the Act. The Appeals Council denied his Request for Review on

_____

[1] This Court uses DE 13's pagination for its citations to the record.

September 5, 2017, thereby leaving the ALJ's decision final and subject to judicial review.

2. The Plaintiff has a high school education plus vocational school training in auto body repair and welding. Except for the year 1997, the Plaintiff has a continuous work history that goes back to 1979. Since 1998 he worked as a maintenance man and groundskeeper at different communities and resorts. By the end of his employment history he had worked his way up to a coveted position at a luxury private golf course.

3. Two remote injuries underlie the Plaintiff's disability claim. The first is a traumatic injury to his right wrist in 1979. Reconstructive surgery was performed at that time, and it underlies the right wrist pain and repeat surgery that is of record. The other injury event occurred more recently, in May 2010. The Plaintiff was at work as a groundskeeper at a golf course when a golf ball hit in the forehead at close range. He did not seek medical care immediately. Instead it was a few days later, after his wife became worried about behavioral changes, when he sought treatment. That head injury was subject of a Worker's Compensation claim.

4. The earliest treatment note of record is dated February 27, 2012. Beforehand the Plaintiff had been seeing a

pain management doctor, Dr. Cordner, for head and neck pain. Dr. Cordner had prescribed Lortab and Tramadol, to which the Plaintiff asked him to prescribe something for his anxiety and stress, too. Dr. Cordner conditioned that added prescription on a urine drug test, the Plaintiff recalled. The Plaintiff declined to take that test seeing no need for it, he explained, but that refusal led Dr. Cordner to discharge him from care. The Plaintiff now came to Dr. Weiss to continue his medical care.

    5.    The Plaintiff complained of mood instability (quick to tense up and to lose patience); cognitive problems (poor memory and focus, slurred speech, zoning out, and poor balance), ADD and OCD-type behaviors; dependence on sedation to sleep; and stress and frustration over his medical condition. He also complained of severe neck pain and "trapped" spinal nerves. Upon examination Dr. Weiss observed poor memory and recall; mildly slurred speech; and signs of pain in his neck and right wrist. Dr. Weiss prescribed Zanaflex (for muscle spasms), Neurontin (for cervical radiculopathy), and Tramadol.

    6.    A variety of radiographic studies were undertaken. Two kinds of brain scans---an MRI and a QEEG---both showed trauma-related abnormalities and confirmed the presence of a closed head injury. The third brain scan---an EEG---was normal. Also an

MRI was taken of the Plaintiff's cervical spine. It showed a bulge at the C3—4 disc site.

7.     The Plaintiff continued to see Dr. Weiss (through Ms. Wise, an ARNP at his practice) on a monthly basis. Dr. Wiess treated him for his various conditions: the closed head injury with related headaches, memory problems, mood instability, and behavioral changes; neck pain that radiates out into his shoulders and upper extremities; poor sleep; and anxiety. Dr. Wiess added Aricept (for memory), Lexapro (for anxiety), and Percocet to his medication regimen. Dr. Weiss also gave the Plaintiff a TENS unit to use on his neck and administered therapeutic injections to his cervical spine. The Plaintiff declined physical therapy complaining that it had increased his pain.

8.     Treatment helped reduce his anxiety. He continued to be in pain, however, and he continued to have difficulty doing his exertionally demanding job. At the May 2012 appointment Dr. Weiss placed him on off-work status, and the two discussed applying for Social Security disability. However the Plaintiff felt compelled to keep working for the income.

9.     A second MRI of the Plaintiff's brain was taken in June 2012. It was normal (in contrast to the positive findings that the March MRI had shown).

10. Later that June the Plaintiff saw Dr. Legler for a neuropsychology evaluation. The Plaintiff reported the same variety of problems that he had told Dr. Weiss. He added that pain had reduced his enjoyment of life. After administering a battery of tests, Dr. Legler diagnosed depression, cognitive impairment, and mood instability attributable to the head injury. He added that the Plaintiff was experiencing post-injury headaches and neck pain, and he attributed the Plaintiff's reduced social and physical functioning to the Plaintiff's post-injury symptoms. Dr. Legler assessed a GAF score of 45.

11. Dr. Weiss's treatment notes for the rest of 2012 and into 2013 show the same range of complaints, with daily headaches being primary, that hinder work. At the same time there were areas of improvement. He reported sleeping better with his medications. Dr. Weiss observed him to have an improved mood. The Plaintiff reported feeling like he finally had begun the healing process. Dr. Weiss anticipated tapering his pain medication down. Thirdly there was mention of alcohol use which Dr. Weiss instructed the Plaintiff to avoid.

12. In February 2013 the Plaintiff reported worsening pain in his right wrist. An x-ray and MRI showed the presence of marked degeneration (osteoarthritis) and an old fracture deformity. A nerve conduction study showed no radiculopathy in

his right upper extremity, however. Dr. Weiss referred the Plaintiff to Dr. Dell, a hand surgery specialist at a university teaching hospital, for further care. Dr. Dell confirmed the osteoarthritis diagnosis.

13.   The Plaintiff originally claimed a disability onset date of May 27, 2013. That is the day when his work hours dropped from full-time to part-time.

14.   The Plaintiff's next appointment with Dr. Weiss was on June 3, 2013. The Plaintiff reported the same range of complaints. He added that pain was hindering his ability to sleep at night, and the poor nighttime sleep plus his medications in turn caused daytime fatigue. He complained of daily severe headaches, but he was unable to take medication at work to relieve the pain. He reported mild depression and anxiety. Dr. Weiss agreed that the Plaintiff should apply for Social Security disability benefits.

15.   On June 11, 2013 the Plaintiff completed his disability application. He claimed disability due to his head injury, right wrist condition, neck condition, and their respective pain and other impairing effects. He reported using opioids to sleep which in turn helped ease his physical pain. The medications also caused depression, constipation, and moodiness, however. The case worker who took his application

described him as very confused and lost; emotional; and unable to answer questions. The case worker suspected cognitive defect.

16. On June 13, 2013 Dr. Dell performed fusion surgery on the Plaintiff's right wrist. The purpose of the surgery was to repair a scaphoid non-union advanced collapse. The final post-surgery follow-up appointment was on August 28, 2013. Dr. Dell described good healing and good placement of the fusion hardware. The Plaintiff's pain now was just modest. He had been receiving physical therapy to improve finger motion and to ease swelling and scarring, and now he could flex his joints and hand to some degree. Dr. Dell released the Plaintiff to part-time work.

17. During those months following surgery, both Dr. Weiss and Dr. Dell prescribed opioids. The Plaintiff told Dr. Weiss on June 18, 2013 that he also was drinking as a form of self-treatment to reduce the pain.

18. On August 12, 2013 the Plaintiff saw Dr. Mihalovich for a consultative psychological evaluation at the Commissioner's request. The Plaintiff admitted to excessive alcohol use as well as to an arrest for a domestic violence incident. The Plaintiff described active daily life activities: driving his wife to work, working in the yard, and spending the afternoons at his local bar. Dr. Mihalovich observed his

presentation and cognition to be normal although his mood was flat. Dr. Mihalovich diagnosed an adjustment disorder with depressed mood.

19. At page 279 is a statement that the Plaintiff's wife submitted to the Commissioner later in May 2016. There she recalls that the Plaintiff had begun to drink more after his 2010 head injury. His drinking became excessive, and by December 2013, she threatened to leave him. He then regained control of his drinking and began attending AA meetings. The reduction in his drinking also reduced household stress, and it increased his participation in family life.

20. The Plaintiff saw Dr. Carlo, a colleague of Dr. Dell, in January 2014. He complained that his right wrist remained sore. The Plaintiff could make a fist, but Dr. Carlo observed tenderness in the soft tissues near the plate hardware. Dr. Carlo prescribed hydrocodone. Should the pain persist, Dr. Carlo suggested surgery to remove the fusion hardware.

21. The Plaintiff quit his now part-time job on May 1, 2014. (At the administrative hearing he amended his alleged disability onset date to May 1, 2014 to reflect the full cessation of all work activity.) His employer had given him a light-duty work accommodation, but he no longer could do the

job's requirements. He agreed to quit at his employer's request. He was 50 years old at the time.

22. On May 15, 2014, while in Rhode Island, he went to the hospital after cutting his left hand. He had cut his hand when throwing out his father's TV set. He complained of severe pain and bleeding. Opioids were prescribed.

23. The Plaintiff returned to Dr. Weiss in August 2014 and saw him (through ARNP Wise) on a monthly basis thereafter through the hearing date. The treatment notes from this period of time remain overall consistent with little change in the Plaintiff's complaints, physical examination observations, or diagnoses. The Plaintiff complained of ongoing severe pain in the form of headaches (with secondary symptoms), neck pain, and pain that radiates from his neck out through his upper extremities. At times he also complained of increased anxiety, depression, and/or irritability. There was no significant change in or reduction of the severity of his pain complaints (other than stress being an aggravating factor). At the same time the Plaintiff did report at least some degree of pain relief from pain medications, and treatment consisted primarily of pain medications (with some effort made to taper their use down). Dr. Weiss described the Plaintiff's condition as stable and described the Plaintiff as doing well with the medications.

24. The Plaintiff lost his health insurance when he went to part-time work. That limited his ability to afford medication. The Plaintiff prioritized his pain medications and stopped others, such as Aricept, to save money. The lack of health insurance also was cited as the reason why neck and right wrist revision surgeries were not carried out. The Plaintiff planned to pursue those surgeries after receiving disability benefits.

25. Dr. Weiss's treatment notes suggest that at some point between April and August of 2015, the Plaintiff made a trip to Chicago and that at some point after September 2015 he visited his family in Massachusetts.

26. This Court notes the last two appointments with Dr. Weiss before the hearing date. At the December 2, 2015 appointment the Plaintiff continued to complain of very severe headaches, neck pain with upper extremity radiculopathy and neuropathy, and associated problems (such as occasional dizziness, inability to lift his head, poor balance, and blurred vision). He reported frustration over decreased functional ability, excessive anxiety and depression, and marital problems. Pain hindered nighttime sleep, and the Plaintiff complained of excessive daytime fatigue. He complained of poor sleep at night because of pain with excessive daytime fatigue. The physical

examination was positive in some respects. Dr. Weiss observed decreased short-term memory and recall (consistent with the Plaintiff's complaint of some memory loss). Dr. Weiss observed spasms, tenderness, and a reduced range of motion in the Plaintiff's cervical spine. Dr. Weiss diagnosed limited motion in the Plaintiff's right wrist. Dr. Weiss continued the Plaintiff's hydrocodone prescription.

27. The Plaintiff returned on December 28, 2015. That treatment note is notable for complaints of severe depression which the Plaintiff attributed to his severe pain. He reported thoughts to harm himself and others. He reported being banned from local bars and pharmacies.

28. The Plaintiff testified at the hearing held February 8, 2016. The Plaintiff claimed disability from his several different pain conditions. He claimed difficulty managing stress and pressure. He had argued with his pharmacist over a medication price increase, and he was banned from his local bar after arguing with the bar's owner. Law enforcement became involved after he reacted angrily to his son sneaking out of the house. Law enforcement removed his guns after deeming him too unstable. He says he drinks as a form of self-medication. He furthers that he was honest and forthright with treating and

examining sources about his troubles because he was seeking
their help.

29.   The Plaintiff said he can sit for 30 minutes at a
time, stand for 20 minutes at a time, and lift up to 15 lbs.
When asked whether he has "any trouble around the house lifting
and carrying things", he explained:

> I do what needs to be done. I picked up the cat litter
> the other day, which was like 30 pounds. It's too
> heavy. I mean, I, I brought it to where it needed to
> go, but I couldn't pick it up and put it in. My son
> did it for me.

He said he lays down during the day. The Plaintiff was 52 years
old at the time of the hearing.

30.   At Step Two of the disability analysis the ALJ found
the Plaintiff to have the severe impairments of status-post
right wrist fusion surgery, history of closed head injury,
headaches, and cervical disc bulge. The ALJ did not find those
impairments wholly disabling, however. The ALJ pointed to the
MRI that showed a normal brain condition; to the MRI that showed
a relatively non-severe cervical spine condition; and to the
normal nerve conduction study of the Plaintiff's right upper
extremity. The ALJ noted the Plaintiff's reports of improved
sleep and other benefits from treatment. The ALJ noted the
"excellent results" from the wrist surgery (but also noted Dr.
Dell's later recommendation for repeat surgery). The ALJ

stressed the normal aspects of the physical examinations such as observations of normal gait, station, motor strength, reflexes, sensation, and lack of atrophy. The ALJ saw no objective test that confirmed a memory impairment (Dr. Legler's report may not have entered the record until after the decision, this Court adds). The ALJ gave great weight to the RFC ratings prepared by the Commissioner's non-examining medical advisors. The ALJ found aspects of the non-medical evidence to contradict the Plaintiff's disability claim. The ALJ stressed how the Plaintiff continued to work for some time after the closed head injury even without taking medication while at work. The ALJ stressed how he lifted a 30 lbs. bag of cat litter, drives regularly, and traveled out of town.

31.   The ALJ found the Plaintiff still capable of performing light work. (The ALJ found no mental health condition to rise to the level of a "severe impairment" for Step Two purposes and made no mental work-related accommodation in the RFC assessment.) Citing the testimony of the Vocational Expert ("VE") who also testified at the hearing, the ALJ found the Plaintiff unable to return to his past work as an industrial-commercial groundskeeper but able to perform the other, more amenable jobs of power screwdriver operator, marker, and router. The ALJ therefore concluded that the Plaintiff is not disabled.

32.   The ALJ rendered the unfavorable decision on April 5, 2016. On May 17, 2016 the Plaintiff requested the Appeals Council to review that unfavorable decision. The Plaintiff argued that the ALJ's decision "contains several errors of law and is not supported by substantial evidence." The Plaintiff added that he was in the process of obtaining additional evidence which "will clearly show [him to be] unable to perform any type of work."

33.   On June 10, 2016 the Appeals Council granted him the extra time to send "more evidence or a statement about the facts and the law in this case." The Appeals Council also cautioned the Plaintiff that "any more evidence must be new and material to the issues considered in the hearing decision dated March 31, 2016." (That letter is found at page 26. The emphasis is in the original text.)

34.   On March 6, 2017 the Appeals Council denied the Plaintiff's Request for Review. (That letter begins at page 11.)

35.   On May 5, 2017 the Plaintiff asked the Appeals Council to vacate its denial, and on July 21, 2017 the Appeals Council granted that request. In correspondence found at page 8, the Appeals Council reopened the case and gave the Plaintiff additional time to submit "a statement about the facts and the law in this case or additional evidence." It again cautioned

that it will "consider additional evidence" if it "is new,
material, and relates to the period on or before the date of the
hearing decision." This time the Appeals Council required the
Plaintiff to show "a reasonable probability that the additional
evidence would change the outcome of the decision" and to "show
good cause for why you missed informing us about or submitting
it earlier." This additional instruction presumably reflects the
recent revision to 20 C.F.R. § 404.970 done earlier that year on
January 17th and its new requirements for obtaining Appeals
Council review. The Appeals Council thereby gave the Plaintiff
the opportunity to adjust his Request for Review to meet the new
requirements.

36.   The Plaintiff thereby added evidence to the
Administrative Record. This Court incorporates any such
additional evidence that pre-dates the ALJ's decision into the
above fact background section where it fits in chronologically.
The proffer also contained treatment notes and medical opinion
statements generated after the date of the ALJ's decision. This
Court reviews them below, also in chronological order.

37.   The additional evidence shows that on May 20, 2016 the
Plaintiff saw Dr. Weiss for ongoing care of his "neurological
complex symptoms" as well as for pain medication refills. He
complained of daily headaches that he attributes to his neck and

which makes it hard for him to hold his head up. He complained
of neck pain that is constant and severe at times and worsened
by activity. He complained of severe pain in his right wrist as
well as in a finger on his left hand. He complained of poor
nighttime sleep and dependence on sedation as well as excessive
fatigue. He reported stable depression but problematic anxiety.
He complained of pain-related stress. Dr. Weiss added buspirone
(an anti-anxiety medication) to his pain medications. However
his memory is improving, he added.

38.  On October 15, 2016 Dr. Weiss filled out a
questionnaire rating the Plaintiff's residual functional
capacity ("RFC"). That questionnaire begins at page 21 of the
Administrative Record. There Dr. Weiss opined that the Plaintiff
can sit for 30 minutes at a time (for a total of three hours in
a day); stand for ten minutes at a time (for a total of one hour
a day); walk for ten minutes at a time (for a total of one hour
a day); and must lay down for three hours at a time (for a total
of four hours a day). Dr. Weiss opined that the Plaintiff also
experiences drowsiness and decreased concentration. That has
been the Plaintiff's RFC since February 27, 2012, Dr. Weiss
furthered.

39.  On October 12, 2016 Dr. Dell filled out an RFC
questionnaire specific to the question of upper extremity

functioning. (It begins at page 17). Dr. Dell opined that the
Plaintiff has no use of his right arm for lifting weight and no
use of his right hand for manipulative tasks. Dr. Dell
attributed those limitations to tenderness and pain in the
Plaintiff's right wrist. The RFC questionnaire form that Dr.
Dell filled out applies "for the time period beginning with the
date of first treatment" which was in April 2013. Accompanying
that questionnaire is a contemporaneous treatment note in which
Dr. Dell described the Plaintiff as having tenderness over his
distal radial ulnar joint and over his dorsal plate. Dr. Dell
suspected joint instability or arthritis. Dr. Dell also repeated
his opinion that the Plaintiff "has a disability of no use of
his right wrist".

40. On September 5, 2017 the Appeals Council denied the
Plaintiff's Request for Review after considering the additional
evidence and the Plaintiff's reasons for disagreeing with the
ALJ's unfavorable decision. In its Notice of Appeals Council
Action (that begins at page 1 of the Administrative Record), the
Appeals Council stated that it saw no reasonable probability
that the new evidence would change the ALJ's decision. The
Appeals Council further found Dr. Dell's questionnaire not to
relate to the period at issue and consequently not to be

informative of whether the Plaintiff became disabled before April 5, 2016.

## DISCUSSION

41. Title 20 C.F.R. § 404.970 sets forth the reasons when the Appeals Council will grant a claimant's Request for Review. One such reason is when a claimant submits additional evidence that might change the outcome of the ALJ's Decision. That is what the Plaintiff did here in his case. Along with his Request for Review, he submitted additional evidence into the record, evidence which the ALJ did not have when she rendered the unfavorable decision. The Appeals Council found that additional evidence insufficient to warrant review.

42. As noted above, 20 C.F.R. § 404.970 (2017) provides the governing standard. When on April 5, 2016 the Plaintiff requested the Appeals Council to review the ALJ's decision, the previous version[2] (for 2016) was in force. Thereafter the Commissioner revised 20 C.F.R. § 404.970, and that new version became effective on January 17, 2017. The Commissioner presumably based its September 5th, 2017 denial of the Plaintiff's Request for Review on the 2017 version.

---

[2] The 2016 version of 20 C.F.R. § 404.970 obliged the Appeals Council to consider additional evidence if it is "new and material" and if "it relates to the period on or before the date of the [ALJ's] decision." The Appeals Council will "review the case if it finds the [ALJ's decision to be] contrary to the weight of the evidence currently of record" which includes the additional evidence.

43. In two respects the new version raised the bar for obtaining Appeals Council review of an ALJ's unfavorable decision. First it added the requirement of a "reasonable probability" that the additional evidence would change the decision. The prior version had no such requirement, although Eleventh Circuit case law imposed a "reasonable possibility" requirement. Second it added the requirement of "good cause" for a claimant's failure to proffer the additional evidence sooner. Eleventh Circuit case law did not require a good cause showing at this stage.

44. The parties discuss the new standard to a very limited extent. Both assume that the "reasonable probability" requirement applies. However neither discusses the "good cause" standard, whether it applies, or whether the Plaintiff demonstrates good cause. Nor did the Appeals Council make a good cause finding on way or the other. For purposes of the present analysis, therefore, this Court follows suit and limits consideration to the new § 404.970(a)(5) criteria (and excludes from consideration the new § 404.970(b) good cause element).

45. This Court turns next to what the § 404.970(a)(5) criteria of the 2017 version are, the criteria by which this Court judges the correctness of the Appeals Council's denial of review. Subsection (a)(5) requires the Appeals Council to review

a claimant's case if the claimant proffers "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision." To that it adds the fourth requirement of "a reasonable probability that the additional evidence would change the outcome of the decision." The Plaintiff argues that the additional evidence he proffered meets that standard and consequently that the Appeals Council should have granted, rather than denied, his Request for Review. This Court agrees.

46.   To begin with, the additional evidence is "new". It includes notes of treatment rendered and opinion statements made after the ALJ had rendered the unfavorable decision. To that extent it is evidence that the Plaintiff could not have proffered to the ALJ. Second the additional evidence is "material". Evidence is "material" if "there is a reasonable probability that [it] would change the outcome of the decision." See 20 C.F.R. § 404.970(a)(5). The evidence includes questionnaires about the Plaintiff's RFC from two doctors with well-established treating relationships with the Plaintiff. Dr. Weiss saw the Plaintiff consistently and regularly over the full length of the medical record. Dr. Dell is a hand surgeon specialist from a university teaching hospital who performed reparative wrist surgery and who anticipates the possible need

20 of 26

for repeat surgery. If their RFC opinion statements are accepted as true, they would provide compelling evidence in support of the Plaintiff's disability application. Third they are chronologically relevant. Both RFC opinion statements expressly relate back to the relative time period. Moreover Dr. Weiss's RFC questionnaire is in addition to statements about the Plaintiff's work ability made earlier in the treatment record (such as found at page 285).

47. This Court notes the general rule that treating source opinion statements are accorded great weight and deference. That does not mean they are controlling or determinative, as the Respondent argues. The Respondent highlights record evidence that might contradict the Plaintiff's disability allegation. However that is better left for the ALJ as fact-finder to weigh out and resolve. The ALJ will be the one to determine if there is good cause to discount the two RFC questionnaires. For now this Court finds a "reasonable probability" that the additional evidence could lead to a different outcome. Whether it actually does will be for the ALJ to decide on the merits.

48. This Court therefore agrees with the Plaintiff that the Appeals Council wrongly denied his Request for Review. It appears that the Plaintiff limits his argument to that first question of whether the additional evidence was of the quality

that required the Appeals Council to grant his Request for
Review. His argument appears limited to the contention that
"there is a reasonable possibility that the new evidence would
change the administrative result." It does not appear that the
Plaintiff proceeds to answer the next question: what is the
available means for redress?

49.     The Commissioner answers in its Response that sentence
four of 42 U.S.C. § 405(g) provides that means of redress---in
the form of judicial remand authority---and that to qualify for
a sentence four remand, the Plaintiff "must show that, in light
of the new evidence submitted to the Appeals Council, the ALJ's
decision to deny benefits is not supported by substantial
evidence in the record as a whole", citing Timmons, 522
Fed.Appx. at 902. The Commissioner states that "[i]t is for the
reviewing court to determine whether the new evidence renders
the denial of benefits erroneous, and whether a remand is
warranted under sentence four of 42 U.S.C. § 405(g)", citing
Ingram v. Comm'r, 496 F.3d 1253, 1262 (11th Cir. 2007). This
Court construes the Commissioner's statement to mean that the
object of judicial review is the ALJ's unfavorable decision (by
virtue of the Appeals Council adopting it when the Appeals
Council denied review) and that this Court considers whether the
ALJ's decision enjoys the support of the whole evidentiary

record including the additional evidence that the Plaintiff proffered after the ALJ's decision. If the ALJ's decision lacks the support of the now expanded evidentiary record, then the available means of judicial relief is to remand the case back to the Commissioner for reconsideration.

50. This Court does not read in the Plaintiff's Motion or Reply an Ingram-based argument for a § 405(g) sentence four remand. Even if the Plaintiff does not raise one expressly, this Court finds his 20 C.F.R. § 404.970(a)(5) (2017) argument sufficient to persuade this Court that he is entitled to such relief. In other words this Court finds his arguments sufficient to show that the ALJ's unfavorable decision lacks the support of the now expanded evidentiary record.

51. This Court notes the standard of review that governs this particular point of inquiry. Judicial review of the Commissioner's decision (which in this case consists of the ALJ's decision) is limited to a determination of whether it is supported by substantial evidence and whether the proper legal standards were applied. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997). Supporting evidence need not be preponderant to be substantial so long as it amounts to more than a scintilla; in other words, it is such relevant evidence that a reasonable person might accept as sufficient and adequate to

support the conclusion reached. See id. at 1440. If the decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court re-weigh the evidence nor substitute its judgment for that of the ALJ. See Wolfe v. Chater, 86 F.3d 1072 (11th Cir. 1996). See also, Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). While the Commissioner's factual findings enjoy such deference, a court is free to review the Commissioner's legal analysis and conclusions de novo. See Ingram, 496 F.3d at 1260. See generally, Jordan v. Comm'r, 470 Fed.Appx. 766, 767-68 (11th Cir. 2012).

52. The additional evidence causes the weight of the whole evidentiary record to run counter to the ALJ's decision. In other words the ALJ's decision lacks the support of competent, substantial evidence when the additional evidence is included in the record. Having independently reviewed the entire Administrative Record including the additional evidence that the Plaintiff proffered to the Appeals Council, this Court sees evidence of a variety of both physical health conditions (a closed head injury with headaches, fusion of his right wrist with associated arthritis, and a cervical disc defect) and mental health conditions (cognitive impairments, depression, and anxiety). The medical record confirms the presence of all of

those conditions. The Plaintiff has complained about them consistently over the treatment history of record. Moreover there is a direct relationship between the closed head injury event and the Plaintiff's unsuccessful attempt to stay in his job even with accommodations. To that, the record now contains formal statements from his established treating doctors who opine that he is disabled.

53.    That is not to say that the record necessarily compels a finding of disabled. As the ALJ noted, there are aspects of the evidence that may run counter to the Plaintiff's disability claim. However the analysis and findings that the ALJ offered in her unfavorable decision do not enjoy the support of the overall record. The ALJ insufficiently accounts for aspects of the evidentiary record that may support the Plaintiff's disability claim.

## CONCLUSION

54.    This Court agrees with the Plaintiff that the Appeals Council wrongly denied his Request for Review. This Court finds his arguments thereon and an independent review of the whole record to support the further finding that the ALJ's decision lacks sufficient evidentiary support. Consequently this Court finds the Plaintiff entitled to a remand for reconsideration pursuant to sentence four of 42 U.S.C. § 405(g).

It is therefore,

**ORDERED AND ADJUDGED** that the Plaintiff's Motion for Summary Judgment (DE 18) is **GRANTED.** This case is **REMANDED** back to the Commissioner for reconsideration pursuant to sentence four of 42 U.S.C. § 405(g).

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 30th day of October, 2018.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE